UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOHN H. KUK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 18-cv-1155 |
| ) | |
| STATE FARM, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is now before the Court on Defendant's Motion for Summary Judgment. (D. 32[1]). For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claim asserted in the Complaint presents a federal question under Title VII, 42 U.S.C. § 2000e, *et seq*. Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2), as the events giving rise to the claims occurred in Bloomington, Illinois.

## BACKGROUND[2]

Plaintiff, John Kuk, was hired by the Defendant, State Farm, as a web systems analyst in November 2011. (D. 18 at 4). Plaintiff is a Korean American male born in Chicago, Illinois. (D. 35-2 at 63). For the first several months of his employment, he worked for different managers and was not assigned to a specific group or project. (*Id.* at 10). In early 2012, Plaintiff was selected to work on the Development Practices Team. (D. 30 at 30).

---

[1] Citations to the docket are abbreviated as (D. __.)
[2] To the extent possible, the information in the Background section is taken in the light most favorable to the Plaintiff.

1

As a member of the team, Plaintiff's manager was required to complete periodic Employee Performance Reviews ("EPRs"), which rated Plaintiff's overall job performance in two categories: (1) "Results" and (2) "Competencies". (D. 32-2 at 1). Both categories were rated on a scale of 1 through 3, with 1 being the lowest and 3 being the highest. *Id.* Plaintiff testified that it was an ongoing joke at State Farm that everyone receives a 2-2 score on their EPRs because that is standard and leads to a certain kind of pay and benefits increase. (D. 35-2 at 43). In addition to the rating scale, the EPRs also included "Mid-Cycle Review Comments" and "End-Cycle Review Comments" (hereinafter, collectively "comments"), which allowed the manager to provide additional feedback on an employee's performance. (D. 32-2 at 1).

During Plaintiff's employment at State Farm, three EPRs were completed during the following time periods:

- **First EPR:** Plaintiff's performance cycle from March 1, 2012-February 28, 2013;
- **Second EPR:** Plaintiff's performance cycle from March 1, 2013-February 28, 2014;
- **Third EPR:** Plaintiff's performance cycle from March 1, 2014-December 31, 2014. (D. 30 at 25-47).

In all three EPRs, Plaintiff received a level 2 in "Results," meaning he "consistently met and occasionally exceeded expectations." (D. 30 at 33, 42; D. 31 at 16). The comments highlighted Plaintiff's technical skills and prior experience as being excellent attributes he brought to the Development Practices Team. (D. 30 at 31, 40; D. 31 at 13).

Plaintiff also received a level 2 in "competencies" in his first two EPRs and a level 1 in "competencies" in his third EPR. Level 1 meant that he "demonstrated some competencies, but not others." *Id.* In contrast to the comments regarding Plaintiff's technical skills, the comments regarding his "competencies" in all three reviews were more critical. The comments in Plaintiff's first EPR stated, in part:

2

> I have received feedback indicating that some associates do not want to continue working with [Kuk]. Critical thinking is definitely needed and constructive feedback on State Farm practices, technical approach and architectural decisions is helpful, but [Kuk] needs to work on understanding these items and moving on once his suggestions have been heard.

*Id.* at 31. Defendant recommended Plaintiff focus on having a positive attitude and collaborate with others in order to be a productive addition to the team. *Id.* at 32.

In the second EPR, the comments again highlighted issues, stating:

> While admirable and overall a positive competency, [Kuk] at times is perceived as more tenacious than called for or pushing alternatives to the point of becoming a negative influence. [Kuk] and I have discussed these situations and while better than a year ago, still have risen occasionally. Listening, collaborating and at times following options brought forth by others on the team are facets of working within the Development Practices team that I expect [Kuk] to embrace. [Kuk]'s approach can put individuals on the defensive, creating a less than productive environment. Recognizing when this starts to occur and choosing a different approach are definite aspects to work on going forward… [Kuk] has a lot of potential and is someone who could operate consistently at a very high level if he can avoid putting individuals on the defensive and exhibits a willingness to accept input.

*Id.* at 40. Defendant recommended that Plaintiff be more aware of when he put individuals on the defensive, exhibit a positive approach and attitude, and be receptive to input from others. *Id.* at 41.

In response to the second EPR, Plaintiff submitted a written rebuttal regarding the comments he did not agree with. *Id.* at 43-47. In addition to his written rebuttal, Plaintiff had four separate "rebuttal" meetings in June 2014 with management to discuss his concerns and disagreements with the comments in his second EPR. (D. 31 at 1-6).

Plaintiff's third EPR again provided similar feedback and concerns, stating:

> Feedback regarding [Kuk] also indicates he needs to work on a more collaborative approach when engaging in dialogue. Understanding how others are receiving the information he is delivering would be greatly beneficial to [Kuk]. Working on his influence with others would also assist him in helping people understand the benefits of his ideas, namely being more succinct and recognizing what

3

> parameters have already been established. This would allow him to understand the entire initiative and what can be controlled or changed.

(D. 31 at 11). His manager went on to state in the comments:

> I encourage [Kuk] to work on methods to become more self-aware and to approach his work with more humility and selflessness. Doing so will enable him to focus on the changes needed to improve his communication, relationship with others, and performance as a team member. Ultimately, this will produce a well-rounded degree of credibility that will enhance his influence and results.

*Id.* at 13. Plaintiff again submitted rebuttals to these comments and refused to sign the EPR. In response, his manager, the manager's supervisor, various human resources ("HR") personnel, and division leadership met with him at least seven times between January 2015 and the end of his employment in May 2015 to help him improve his performance deficiencies. (D. 32-2).

Outside the EPR process, Plaintiff continued to have performance issues. In March 2015, a performance memorandum was issued to Plaintiff addressing several ongoing concerns regarding his interpersonal skills and deficiencies in core competencies over the previous six months and expectations to correct his interactions with others. *Id.* at p. 2; D. 36-1 at 49. At that point, he was warned that if he failed to demonstrate immediate and sustained improvement in his performance, it might lead to further disciplinary action and possibly termination of his employment. *Id.*

Plaintiff then requested two meetings with the assistant vice president and HR manager and disagreed with them regarding the matters discussed and the plan of action going forward. (D. 32-3, p. 2). In April 2015, Plaintiff's manager, his manager's supervisor, and several HR personnel met with him again regarding his "competencies." (D. 36-1 at 53). Throughout the meeting, Plaintiff interrupted and tried to talk over his superiors as they attempted to outline their expectations of the meeting in order to make comments about his EPR. *Id.* At the end of the

4

meeting, Plaintiff was instructed to have a positive attitude and an open mind when participating in future conversations. *Id.*

During the first several months of 2015, Plaintiff also filed several Compliance and Ethics Complaints regarding having to work in a hostile environment where bullying and discrimination could take place. *Id.* at pp. 72-75, 88-95. Each complaint was investigated, but the investigations did not reveal that any policy violations had occurred. *Id.*

By May 2015, it became clear to Defendant that Plaintiff's issues were not going to be resolved and his employment was terminated effective May 9, 2015. *Id.* at pp. 63-67. The reason for his termination: repeatedly demonstrating a lack of self-awareness by blaming others for his poor performance, consistently and excessively arguing against any feedback provided, failing to acknowledge that he needed to improve his performance, and refusing to accept any coaching or feedback offered. (*Id.* at 68-69).

## PROCEDURAL HISTORY

Plaintiff previously filed a charge before the United States Equal Employment Opportunity Commission ("EEOC"). (D. 1 at 7). Specifically, Plaintiff alleged that he was discriminated against because of his race, sex, and in retaliation for engaging in protected activity. *Id.* The EEOC was "unable to conclude that the information obtained establishes a violation of the statutes" and denied his claim. *Id.*

On April 13, 2018, Plaintiff filed this Complaint for employment discrimination pursuant to Title VII, 42 U.S.C. § 2000e, alleging the Defendant intentionally discriminated against him by: (1) terminating his employment; (2) failing to stop harassment; (3) retaliating against him because he asserted his legal rights; and (4) coercing, intimidating, threatening, or interfering with the exercise or enjoyment of his rights. *Id.* at p. 3.

Ultimately, before the Court is Plaintiff's Fourth Amended Complaint[3] filed on December 3, 2018. (D. 18). Defendant filed an Answer and Affirmative Defenses on December 17, 2018. (D. 19). On March 12, 2020, Defendant filed its Motion for Summary Judgment. (D. 32). On March 13, 2020, this Court filed a Rule 56 Notice regarding Defendant's Motion for Summary Judgment. (D. 33). On June 25, 2020, Plaintiff filed his Response[4] (D. 35), and on July 9, 2020, Defendant filed its Reply. This Order follows.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). "In deciding motions for summary judgment, courts must consider the evidence as a whole," *de Lima Silva v. Dep't of Corrs.*, 917 F.3d 546, 559 (7th Cir. 2019), and "view[ ] the record and all reasonable inferences . . . drawn from it in the light most favorable to the nonmoving party," *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018). However, the court will not draw inferences that are "supported by only speculation or conjecture," *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

---

[3] The facts and allegations remain the same, but the damages and relief sought in the Fourth Amended Complaint were amended from the previously filed complaints. (D. 1; D. 18).
[4] The Court granted an extension until June 1, 2020, for Plaintiff to file his Response. When no Response was filed as required by Rule 56, the Court granted another extension until June 25, 2020.

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "It is not the role of the [c]ourt to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment." *Aberman v. Bd. of Educ. of City of Chi.*, 242 F. Supp. 3d 672, 685 (N.D. Ill. 2017) (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 646 (7th Cir. 2011). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

As a preliminary matter, the Court notes and takes into consideration the fact that the Plaintiff is a *pro se* litigant, but finds that ruling on Defendant's Motion for Summary Judgment has been complicated by Plaintiff's failure to comply with the Central District of Illinois' Local Rule 7.1 and Federal Rule of Civil Procedure 56. Specifically, Local Rule 7.1(D)(2) states:

> Similar to answering a complaint, in response the party opposing the summary judgment, shall file a *separate* document (entitled "Response to statement of Undisputed Facts") which *numerically* responds to each of the movant's undisputed facts. The party will either *admit* or *contest* the fact. If the fact is contested, the party (1) shall submit a short and plain statement of why the fact is in dispute and (2) cite to discovery material or affidavits that support the contention that the fact is disputed. (Emphasis in original.)

When he filed the Response, Plaintiff did not comply with the requirements of Local Rule 7.1(D). In response to paragraphs 4-7, 16-18, 20-24, 26-29, and 31 of Defendant's Motion for

Summary Judgment, he states that he "disagrees" and "moves to strike" the facts set forth but does not provide citations to the record establishing material evidence to the contrary. Additionally, Plaintiff provided this Court with little reasoned analysis explaining why summary judgment should not be granted.

> Rule 56 of the Federal Rules of Civil Procedure instructs:
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record," or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact . . . . If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]

FED. R. CIV. P. 56(c)(1), (e)(2). To the extent Plaintiff introduces unsupported facts in his Response or includes facts to which he fails to provide documentary substantiation, the Court considers the facts undisputed for the purposes of its analysis. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) (affirming decision of district court which assumed the facts as claimed and supported by admissible evidence by the moving party were admitted to exist without controversy); *Thomas v. Kroger*, No. 13-CV-00588, 2014 WL 555086, at *1 (S.D. Ind. Feb. 12, 2014) ("Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.").

Plaintiff identifies only two claims of employment discrimination in violation of the Civil Rights Act of 1964: (1) disparate treatment via unlawful termination and (2) retaliation. Plaintiff's testimony also appears to hint at harassment, and because he is a *pro se* litigant, this Court will address this claim as well.

### I.     Disparate Treatment

Title VII makes it unlawful for an employer to discharge or discipline an employee because of that person's race or sex, among other grounds. 42 U.S.C. § 2000e; *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). In assessing a Title VII claim, courts often use the *McDonnell Douglas* burden-shifting framework to organize the evidence, although the evidence must ultimately be considered as a whole when deciding the summary judgment motion. *See Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

To establish a *prima facie* case of discrimination, a plaintiff must offer evidence: "(1) he is a member of a protected class; (2) his job performance met [the employer's] legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Burks v. Wisconsin Dep't of Transportation,* 464 F.3d 744, 750-51 (7th Cir. 2006); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The failure to satisfy any one of these elements is fatal to Plaintiff's claim. *See Gates v. Caterpillar, Inc.,* 513 F.3d 680, 690 (7th Cir. 2008) (affirming district court's dismissal of discrimination claim because the plaintiff was unable to meet either the second or fourth prongs of the *McDonnell Douglas* test).

Here, Plaintiff's Response makes no citation to the legal framework applicable to addressing his claims and cites none of the numerous cases from the Seventh Circuit addressing disparate treatment based on race or gender. In fact, most of his Response argues the validity of the negative comments received in his EPRs and further demonstrates his lack of accountability and ability to accept constructive criticism, which the Court notes ultimately led to his termination.

Plaintiff's Response also makes no attempt to address the essential elements of a *prima facie* case or the arguments and authority presented by Defendant's summary judgment motion.

The argument section of his Response contains one paragraph of conclusory allegations that Defendant is hiding its systemic discriminatory behavior behind unflattering performance reviews. (D. 35 at 13-14). Plaintiff's Response further argues that, if given the chance to take his case to trial, he will present stories of various scenarios of discrimination faced, but he provides no specific facts or evidence in support of this assertion. *Id.*

This kind of perfunctory and underdeveloped legal argument is utterly insufficient to survive a motion for summary judgment, and it is well settled that responses of this type result in a waiver of all arguments. *Jorden v. Walmart Stores, Inc.,* 322 F.Supp.2d 1172, 1177 (2004); *see also, Finance Investment Co. v. Geberit AG,* 165 F.3d 526, 528-529 (7th Cir. 1998) (finding a perfunctory and underdeveloped argument to be waived). As a result, the Court finds that Plaintiff has waived all arguments in response to the Motion for Summary Judgment by virtue of his perfunctory and legally undeveloped response, and Defendant is thus entitled to judgment as a matter of law.

Assuming arguendo that Plaintiff did not waive all arguments, it is undisputed that Plaintiff is a member of a protected class and ultimately suffered adverse employment action, namely, termination. (D. 32 at 21). However, Defendant argues Plaintiff's disparate treatment claim must be denied, as he fails to demonstrate that he was meeting its reasonable expectations and that similarly situated employees outside of his protected class were treated more favorably. *Id.* at 21-22. Defendant adds that it had legitimate, non-discriminatory reasons for Plaintiff's termination and that Plaintiff fails to demonstrate its decision is pretextual. *Id.* at 22-24.

The Court finds Plaintiff fails to satisfy either the second or fourth prongs of the *McDonnell Douglas* framework and therefore fails to proffer sufficient evidence for a reasonable factfinder to conclude his race or national origin caused his discharge. *See Ortiz v. Werner*

*Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("[The] legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, . . . or other proscribed factor caused the discharge."). Accordingly, his discrimination claim based on disparate treatment fails.

### A. Plaintiff Fails to Demonstrate Meeting Legitimate Expectations

Regarding Plaintiff's job performance, despite some evidence demonstrating positive feedback regarding his technical skills and experience (D. 30 at 31, 40; D. 31 at 13), Plaintiff fails to demonstrate that he was meeting his employer's legitimate expectations at the time of his termination. To his detriment, the record contains ample undisputed evidence of concerns with his performance. Plaintiff was repeatedly told he needed to improve his communication and interpersonal skills and correct deficiencies in core competencies. (D. 30 at 31, 32, 41; D. 31 at 11, 13; D. 32-2 at 2; D. 36-1 at 49). He concedes that he received three EPRs addressing these concerns and had numerous meetings with his managers, HR personnel, and division leadership about these issues. (D. 35-2). Despite the subpar reviews on performance evaluations and instructions on how to improve going forward, Plaintiff refused to accept the comments and continued to do exactly what he was told not to do by criticizing and arguing with those giving the feedback, because he personally did not agree with it. (D. 30 at 43-47, D. 31 at 1-6; D. 32-3 at 1-2; D. 36-1 at 53). Plaintiff simply cannot survive summary judgment on this record.

### B. Plaintiff Fails to Identify Similarly Situated Employees

Even assuming Plaintiff was meeting Defendant's legitimate expectations at the time of his termination, he fails to demonstrate there were similarly situated employees outside of his protected class who were treated more favorably. In order to defeat summary judgment, Plaintiff must identify comparators who "dealt with the same supervisor, were subject to the same

standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates*, 513 F.3d at 690 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000), *overruled on other grounds by Ortiz*, 834 F.3d at 765.); *Eaton v. Ind. Dep't of Corrs.*, 657 F.3d 551, 559 (7th Cir. 2011) (reiterating a similarly situated employee must be comparable to a plaintiff in all "material respects").

Plaintiff fails to reference evidence in the record that demonstrates potential comparators, who reported to the same supervisor or had engaged in similar conduct, were treated more favorably. The record also fails to indicate—and Plaintiff fails to argue—that any potential comparator had similar issues with miscommunication or misconduct (e.g., deficiencies in communication skills, interpersonal skills, and core competencies) as Plaintiff. *See Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2001) ("Without a similar disciplinary history, [the comparator] cannot be considered 'similarly situated.'"). Finally, Plaintiff fails to include any case law to support his argument that he has identified similarly situated employees. (D. 35). This unsupported and undeveloped legal argument is insufficient to survive a motion for summary judgment, and the Court finds Plaintiff fails to meet the fourth prong of the *McDonnell Douglas* framework to proceed on his claim.

The legal standard in an employment-discrimination claim "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, . . . or other proscribed factor caused the discharge." *Ortiz*, 834 F.3d at 765. The Court finds Plaintiff has failed to proffer evidence for a reasonable factfinder to conclude his race or gender caused his discharge. He has also failed to proffer sufficient evidence to demonstrate he was meeting Defendant's legitimate expectations at the time of his termination or to successfully refute

Defendant's evidence to the contrary. He further failed to provide evidence that suitable comparators, outside of his protected class, were treated more favorably. Accordingly, Defendant's summary judgment motion on Plaintiff's claim of disparate treatment via unlawful termination is GRANTED.

## II.  Retaliation

Plaintiff argues he was the subject of retaliation for filing internal complaints regarding two allegedly discriminatory instances. (D. 35-2 at 52-59). In his first complaint, Plaintiff claimed that he witnessed a male co-worker speaking to a female co-worker in a "condescending" manner. *Id.* at 55. In his second complaint, Plaintiff asserted that developers at State Farm "bullied" Indian members of an external contractor group. *Id.* at 58-59. The retaliation, he contends, was that he was moved to a separate room to work with two other State Farm employees, received negative performance reviews, and ultimately his termination.

To establish a claim of retaliation under Title VII, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). Here, Plaintiff fails to demonstrate his complaint constituted protected activity of which his supervisor had actual knowledge. As such, his final discrimination claim fails.

The Seventh Circuit has instructed:

> Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.

*Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (internal citation omitted). After a thorough review of Plaintiff's internal complaint, the Court finds that his complaint fails to indicate, or to even create an inference, that Plaintiff was the subject of discrimination.

Moreover, Plaintiff fails to demonstrate his supervisor was aware of his complaint when he was moved to work in a different room or when completing his EPRs. His supervisor's actions would only constitute retaliation if he had actual knowledge of Plaintiff's complaint. *See Emerson v. Dart*, 900 F.3d 469, 472 (7th Cir. 2018) ("[Defendants'] alleged misdeeds count as retaliation only if they had actual knowledge of the . . . grievance."). Additionally, although Plaintiff argues the contrary, since all these formal complaints were made after Plaintiff's three EPRs, there is no way the negative feedback he received in the EPRs could have been in retaliation to him filing complaints.

Accordingly, no reasonable jury could conclude Plaintiff suffered retaliation due to his complaint, and Defendant's Motion on this ground is GRANTED.

### III.    Harassment

While not specifically addressed in Plaintiff's Fourth Amended Complaint, the Court notes that Plaintiff raises allegations of harassment. Due to Plaintiff's *pro se* litigant status, the Court will consider and address those allegations. Plaintiff alleges he was subject to a hostile work environment because he was overqualified for his position and still required to complete training that he found to be below him; that other unidentified persons moved his computer screen and chair and left garbage at or around his desk in the collaboration room he was assigned to work in; and he was asked to fill out an ADA report when he made complaints of his chair causing him back pain before he could get a new chair. (D. 35-2).

To survive summary judgment on his hostile work environment claim, Plaintiff must demonstrate: (1) his work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on his race or national origin; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). "Not every unpleasant workplace is a hostile environment . . . . The workplace that is actionable is the one that is hellish." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). None of Plaintiff's examples of misconduct rise to the level of actionable harassment, and Plaintiff's argument fails.

Furthermore, Plaintiff fails to provide any case law supporting his contention that these occurrences constitute actionable harassment. (D. 35). Accordingly, Defendant's Motion for Summary Judgment on this claim of discrimination is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's [32] Motion for Summary Judgment is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff. The case is now TERMINATED. The Clerk is DIRECTED to close this case.

ENTERED this 6th day of August, 2020.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge